UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAVONTAH NELSON,

       Plaintiff,

v.

UNKNOWN KNOP et al.,

       Defendants.
_____/

Case No. 1:19-cv-824

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues food service server Unknown Knop[1] and Lieutenant Unknown Quinn.

Plaintiff alleges that on October 9, 2018, Defendant Knop wrote a false misconduct against Plaintiff for possession of stolen property. The misconduct hearing was conducted by Defendant Quinn. Plaintiff was found guilty and, as a result, lost his job, was sanctioned with 30 days' loss of privileges, and lost "good time." Plaintiff claims that defendant Quinn had prepared a written disposition of the misconduct charge before the hearing started. He complains that Quinn refused to look at the video recording of the alleged incident, refused to interview Plaintiff's exculpatory witness, and refused to look at written statements obtained by Plaintiff. Defendant Quinn reported that he had watched the video and saw Plaintiff go through the breakfast line twice. Plaintiff claims that is an obvious lie because the alleged violation occurred at 12:55—lunch—not breakfast.

Plaintiff claims that the false misconduct report by Knop and the sham hearing by Quinn violated Plaintiff's due process rights. He asks the Court to declare that Plaintiff's Fourteenth Amendment due process rights were violated; to compel Defendants to follow department rules; to discipline Defendants; to compel a new hearing where Plaintiff's evidence and the proper video are considered; to compel Plaintiff's rehiring; and to award compensatory and punitive damages in the amount of $140,000.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

---

[1] Plaintiff's penmanship is generally legible; but, some of the letters are difficult to interpret. The docket reflects the party's name as "Knoe" but after reviewing Plaintiff's several references to the name, the Court concludes the proper spelling is "Knop."

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights.

### III. Due process

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiff complains that he lost his job. But, the Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty or property interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff's loss of employment or the loss of wages does not rise to the level of the deprivation of a protected interest.

Plaintiff indicates that, in addition to losing his job, he lost "good time." To the extent a disciplinary sanction affects the duration of the prisoner's sentence, he is entitled to the protections of due process. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Plaintiff's claim that this misconduct conviction affected the duration of his sentence is untenable.

Plaintiff is not eligible to earn "good time." Plaintiff was convicted of first-degree murder and first-degree child abuse. He is serving a sentence of 10 to 15 years for child abuse and life without parole for murder. Plaintiff committed the crimes on October 9, 2013, and his judgment of sentence was entered August 12, 2014. https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=940632 (visited Oct. 24, 2019). Because Plaintiff committed his crimes after December 15, 1998, he is not eligible for "good time" credits nor is he eligible for disciplinary credits; instead, Plaintiff is a prisoner "subject to disciplinary time." Mich. Comp. Laws §§ 800.33, 800.34; MDOC Policy Directive 03.01.105 (Eff. July 10, 2017).

Plaintiff's conviction of possession of stolen property does not impact "disciplinary time." Possession of stolen property is a Class II misconduct, a "minor" misconduct in the MDOC's disciplinary scheme. MDOC Policy Directive, 03.03.105 (Eff. July 1, 2018). Disciplinary time only accumulates for major misconduct convictions. Mich. Comp. Laws § 800.34; MDOC Policy Directive 03.01.105 (Eff. July 10, 2017).

Finally, even if the misconduct resulted in the accumulation of disciplinary time, such an accumulation would not affect the duration of Plaintiff's sentence as contemplated by *Sandin*. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits, the precursor to disciplinary time under Michigan law. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not

necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system that resulted in the accumulation of disciplinary time does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). Thus, even if Plaintiff accumulated disciplinary time, that sanction would not warrant due process protections.

A prison disciplinary sanction may also implicate the protections of due process if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484. Plaintiff's thirty days' loss of privileges does not rise to the level of an atypical and significant hardship. Indeed, the *Sandin* court concluded that thirty days in segregation, a far more restrictive penalty, was not so severe a sanction that due process protection was warranted. *Id*. at 484-86; *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) ("14-day loss of privileges did not deprive him of a protected liberty interest . . . ."); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("The sanction imposed for Alexander's misconduct charge—thirty days' loss of privileges—did not implicate a protected liberty interest . . . ."); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan 24, 2017) ("[T]hirty-day loss of privileges . . . does not amount to an 'atypical and significant hardship.'").

Because Plaintiff was not deprived of any protected liberty or property interest, he has failed to state a claim for violation of his due process rights.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Knop and Quinn will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: November 4, 2019

/s/ Janet T. Neff
Janet T. Neff
United States District Judge

7